IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

VIRGIL RIVERS BEY,

        Petitioner,

    v.                                    Civil Action No. 3:23cv584

D. LEU,[1]

        Respondent.

## MEMORANDUM OPINION

Virgil Rivers Bey, a federal inmate proceeding *pro se*, submitted a 28 U.S.C. § 2241

Petition ("§ 2241 Petition").  (ECF No. 1.)[2]  Bey contends that the Federal Bureau of Prisons

("BOP") has failed to award him the appropriate amount of good conduct time credit so he has

served more time than required.  Respondent has filed a Motion to Dismiss, or in the alternative,

---

[1] Counsel for Respondent points out that the proper respondent here is the warden of the facility where Bey is detained, or D. Leu.  (*See* ECF No. 6, at 1 n.1 (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)).  Therefore, the Clerk is DIRECTED to update the caption to that reflected above.

[2] The statute provides, in pertinent part:

(c) The writ of habeas corpus shall not extend to a prisoner unless—

    (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

    (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

    (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C.A. § 2241(c)(1)–(3).

for Summary Judgment. (ECF No. 5.)[3]  Respondent provided *Roseboro*[4] notice, (ECF No. 5, at 2), and Bey has filed a variety of responses.  For the reasons set forth below, the Motion for Summary Judgment will be GRANTED, and the § 2241 Petition will be DENIED.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the Court of the basis for the motion, and to identify the parts of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251

---

[3] Because the Court has considered the affidavit and supporting documents provided by Respondent, the Court will treat the submission as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c). Consequently, the portion of the Motion seeking Dismissal under Rule 12(b)(6) will be DENIED AS MOOT.

[4] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

(citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). Moreover, the facts offered by a sworn declaration must also be in the form of admissible evidence. Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).

In support of his Motion for Summary Judgment, Respondent submits: (1) the Declaration of Jon McEvoy, a Management Analyst at the Designation and Sentence Computation Center in Grand Prairie, Texas, (ECF No. 6-1);[5] (2) records from Bey's criminal proceedings, (ECF No. 6-2, at 1–5); (3) Bey's BOP sentence computation records and administrative remedy records, (ECF No. 6-2, at 6–11, 19–37); and, (4) relevant portions of BOP Program Statement 5880.28, (ECF No. 6-2, at 12–18).

---

[5] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in the quotations from Bey's submissions. The Court omits the secondary citations in the quotation from Respondent's submissions.

3

At this stage, the Court is tasked with assessing whether Bey "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Although Bey has filed a variety of responses, miscellaneous documents, and addendum, he has not submitted a proper sworn statement.[6]

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Bey.

## II.  Pertinent Facts

Federal authorities arrested Bey on September 29, 2003, and he has remained in continuous federal custody since his arrest. (ECF No. 6-1 ¶ 5.)[7] On February 28, 2006, Bey was convicted of conspiracy to commit bank robbery, bank robbery, and unlawful use of a firearm in the United States District Court for the Eastern District of New York and was sentenced to 300 months and one day. (*See* ECF No. 6-2, at 1–2.)

In accordance with BOP Program Statement 5880.28 and 18 U.S.C. § 3585(a), the BOP prepared a sentence computation for Bey, commencing his 300 month and one day sentence on February 28, 2006, the date his sentence was imposed. (ECF No. 6-2, at 9, 12–13.) The BOP also calculated prior custody credit for the time when Bey was arrested and held by federal

---

[6] The only sworn submissions are Bey's two Responses, which are briefs in opposition. (ECF Nos. 11, 13.) Even though these submissions are sworn, they are comprised of arguments and conclusions and are not of any evidentiary value. Nevertheless, the Court has reviewed and considered the arguments in these submissions.

[7] Bey's criminal and BOP records are all under the name, Virgil Rivers.

authorities until his sentencing date, or from September 29, 2003 until February 27, 2006.

(ECF No. 6-2, at 9.)  In accordance with BOP Program Statement 5880.28, and 18 U.S.C. §

3624(b), Bey "is eligible to receive up to 54 days of credit, or good conduct time ('GCT'),

toward [his] sentence at the end of each year of his term of imprisonment if he complies with

institutional disciplinary regulations" that year.  (ECF No. 6-1 ¶ 8.)  However, if Bey fails to

"comply with disciplinary regulations, he may receive less than 54 days of GCT credit or no

GCT whatsoever during each year of his imprisonment."  (ECF No. 6-1 ¶ 8.)  This is known as a

"disallowance of GCT credit."  (ECF No. 6-1 ¶ 8.)  GCT credit earned in prior years is also

"available for forfeiture if [Bey] is not compliant with institutional disciplinary regulations."

(ECF No. 6-1 ¶ 8.)

Bey was "originally eligible to earn a total of 1350 days of GCT credit toward his release

date, which is calculated by multiplying 25 years (i.e., 300 months) by 54 days per year."  (ECF

No. 6-1 ¶ 9.)  If Bey had "received all 1350 days of GCT credit . . . he would only be required to

serve approximately 85 percent of his sentence."  (ECF No. 6-1 ¶ 9.)  However, Bey "has

received multiple disciplinary incident reports, including several 100-level (Greatest Security

Level) and 200-level (High Security Level) infractions that resulted in the disallowance and/or

the forfeiture of GCT credit."  (ECF No. 6-1 ¶ 10.)  As of November 15, 2023, Bey had lost a

total of 348 days of GCT credit toward his release date.  (ECF No. 6-1 ¶ 11.)[8]  Therefore, Bey "is

---

[8] Respondent explains that although BOP records show that:

122 days of good conduct time were disallowed between September 28, 2011, and
September 27, 2012, and 68 days of good conduct time were disallowed between
September 28, 2014, and September 27, 2015.  However, similar to his ability to
earn 54 days of good conduct a year, [Bey] can only have a disallowance of up to
54 days of good conduct time per year of his federal sentence, thus the 122 day and
68 day disallowances are counted as 54 day disallowance when calculating his total
loss of good conduct time.

only eligible for a total of 1,002 days of GCT credit" toward his sentence, resulting in his serving more than 85 percent of his sentence. (ECF No. 6-1 ¶ 11; *see* ECF No. 6-2, at 30.)  Based on the current calculation, Bey is scheduled for release from BOP custody "via the projected earning of good conduct time, on December 31, 2025," and his "sentence has been computed according to applicable federal statutes and BOP policy." (ECF No. 6-1 ¶ 13.)

### III.  Analysis

Bey contends that the BOP has incorrectly calculated his sentence.  Specifically, he argues that he has already served more than eighty-five percent of his sentence and believes that he should be immediately released into a residential reentry center. (ECF No. 1, at 6–8.)

Pursuant to 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).  Here, in accordance with the federal statute and BOP policy, Bey's sentence commenced on February 28, 2006, the date his sentence was imposed, and he also received prior custody credit of approximately two and a half years from the time he was arrested, September 29, 2003, until the day before his sentence was imposed, February 27, 2006. Inmates who are "serving a term of imprisonment of more than 1 year . . . may receive [GCT] toward the service of [their] sentence . . . of up to 54 days at the end of each year . . . ." 18 U.S.C. § 3624(b)(1).  If Bey had not received institutional infractions, he would have earned 1350 days of GCT credit, and he would only have to serve 85 percent of his sentence.  However, the undisputed evidence demonstrates that Bey received many disciplinary charges during his

---

(ECF No. 6-1, at 4 n.1 (internal citation omitted).)  The 348 days subtracted were comprised of 160 days of GCT credit forfeited and 188 days of GCT credit disallowed. (*See* ECF No. 6-2, at 30.)

current incarceration and lost 348 days of GCT through disallowance or forfeiture, which has resulted in his only being eligible to earn 1002 days of GCT credit toward his sentence.[9] Thus, Bey lacks entitlement to serving only 85 percent of his sentence and he will have to serve more time. Accordingly, Bey's claim -- that because he has served more than 85 percent of his sentence he should be released -- lacks merit.

### IV.  Conclusion

Bey's Addendum Motion in the Interest of Justice, (ECF No. 9), will be GRANTED to the extent that the Court reviewed and considered its contents. The Motion for Summary Judgment, (ECF No. 5), will be GRANTED. The § 2241 Petition, (ECF No. 1), will be DENIED.

An appropriate Final Order shall accompany this Memorandum Opinion.

Date: 5/1/6004
Richmond, Virginia

M. Hannah Lauck
United States District Judge

---

[9] Bey does not dispute that he had these disciplinary infractions or that he lost 348 days of GCT. It is not entirely clear what Bey intends to argue. Bey attaches BOP Program Statement 5100.08 from 2006 and in 2019. (*See, e.g.*, ECF No. 16, at 4; ECF No. 11-1, at 1–4.) To the extent that he reads the examples contained therein to mean that an inmate will always get a 15 percent reduction in their sentence and will only have to serve 85 percent of their sentence, (*see* ECF No. 9, at 2), he is incorrect.

7